IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF MINOOKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24 C 5200 |
| ) | |
| WISCONSIN CENTRAL LTD., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Village of Minooka has sued Wisconsin Central Ltd. (WCL), a subsidiary of Canadian National Railway (CN). The lawsuit concerns an intermodal facility and, possibly, a logistics park that WCL is planning to construct in what is currently farmland mostly located in the Village of Channahon. Channahon generally borders Minooka to the east and south, but in the area where WCL is intending to build, Channahon also lies to Minooka's west. A bit to the east of the planned facility, in Minooka, lies a north-south road called McLindon Road. (The CN tracks cross McLindon Road.) A bit to the south of the planned facility lies US Route 6, an east-west road.

The activities at the intermodal facility would include taking containers from railroad cars and placing them onto semitrucks, and vice versa. A large volume of incoming and outgoing truck traffic is anticipated—according to the complaint (which for this cites a projection by WCL), as many as 9,600 heavy trucks daily. During the planning process for WCL's planned facility, Minooka proposed to have trucks enter and exit the planned facility only at Route 6 and not at McLindon Road. According to

Minooka's complaint, WCL rejected this proposal and intends to have two access points for trucks, one on McLindon Road and the other on Route 6.

According to Minooka's amended complaint, prior to March 2024, Minooka's village code provided for a 40-ton weight limit on McLindon Road from its intersection with Twin Rail Drive (which is just north of the CN-McLindon Road crossing), north to Minooka Road. To the south, toward Route 6, the weight limit was 8 tons. In March 2024, Minooka amended the village code to make the 40-ton stretch of McLindon road start a bit further to the north—north of Twin Rail Drive—and correspondingly extended the 8-ton limit to that same spot, which is where the tracks of another railroad, CSX, cross McLindon Road. Then in April 2024, Minooka amended the village code again, this time increasing the McLindon Road weight limit to 25 tons from Twin Rail Drive north to the CSX crossing. The limit remained at 8 tons for the stretch of McLindon Road from Twin Rail Drive, across the CN crossing, all the way south to Route 6.

WCL/CN sent Minooka a letter on April 26, 2024 that it said was in response to Minooka's request "that CN explain why we would not apply for local approval of our interstate intermodal terminal facility." Am. Compl., Ex. 15 at 1. WCL/CN asserted, in substance, that federal law—specifically, the ICC Termination Act, 49 U.S.C. §10501(b)—confers upon the federal Surface Transportation Board exclusive jurisdiction over rail carrier facilities like the one at issue in this case. WCL asserted that federal law "would preempt any effort to use state or local law—including any sort of permitting or approval process—to prevent the establishment" of its facility. *Id.* at 2. WCL also asserted that the ICCTA "also preempts state or local laws if they are applied in a discriminatory manner," and said that for this reason, it was "particularly alarmed by

Minooka's recent amendment to its ordinance on vehicle weight limitations to decrease the truck weight on McLindon Road, which appears designed to prohibit commercial trucks from operating between CN's facility and Interstate 80" (which is located to the west and north of the planned facility). *Id.*

Minooka then filed the present lawsuit. The village asserts a single claim seeking a declaratory judgment that its weight limits on McLindon Road are valid and enforceable and not preempted by the ICCTA. WCL answered Minooka's claim and has asserted a two-count counterclaim. In Count 1, WCL seeks a declaratory judgment that the ICCTA preempts Minooka's 25-ton weight limit on McLindon Road[1] and an injunction barring enforcement of the limit(s). In Count 2, WCL seeks a declaratory judgment and an injunction barring Minooka from applying to its project any "local permitting, preclearance, zoning, or similar regulations that could interfere with or prevent the construction and operation of any part of the . . . project and facility." Ans. to Am. Compl. and Countercls., p. 48 ¶ C (prayer for relief); *id.* ¶¶ 77-78.

Minooka has moved to dismiss or strike Count 1 of the counterclaim on the basis that it is essentially the mirror image of Minooka's affirmative claim and thus unnecessary. It has moved to dismiss Count 2 of the counterclaim on the basis that it references no particular regulations or enforcement actions and thus is unripe.

Regarding Count 1 of the counterclaim, a court has the discretion to dismiss a declaratory judgment counterclaim if it is simply a mirror image of the plaintiff's complaint and seeks a ruling opposite of the one the plaintiff seeks. *See generally*

---

[1] In its prayer for relief, WCL does not, or at least does not specifically, seek a ruling that the 8-ton weight limit further south on McLindon Road is preempted. *See* Ans. to Am. Compl. and Countercls., p. 48.

3

*Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985). But here there is a difference: WCL seeks an injunction barring enforcement of Minooka's weight limit ordinance, whereas Minooka seeks only a declaratory judgment saying it is enforceable. That's arguably not a huge difference, but in the Court's view it is sufficient to permit Count 1 to proceed.

Count 2 involves a different sort of problem. In contrast to Count 1, which is targeted at a specific action by Minooka (enforcement of the ordinance setting the weight limit on McLindon Road), Count 2 does not identify any particular ordinance, regulation, action, or even threatened action by the village. Nor does it identify a particular *type* of regulation or activity on Minooka's part that WCL seeks to enjoin. Rather, it seeks a blanket prohibition that is targeted on the *effect* of the regulation or action on WCL's project: anything "that could interfere with or prevent the construction or operation of any part" of the project. It is difficult to see how an injunction that says that—and that's the language WCL itself uses in its complaint—could satisfy the requirement of Federal Rule of Civil Procedure 65(d) that any injunction must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C).

The problem is either that there is no regulation or permitting requirement aside from the McLindon Road weight limit that has actually been interposed that would halt or interfere with WCL's construction or operation of the project or that there is something of that sort, but WCL has not identified what it is. If it's the latter, then the flaw in Count 2 is that it fails to set out a sufficient factual basis for the claim. If it's the former, then the claim is insufficiently ripe, because in that event Minooka has not enforced,

attempted to enforce, or threatened enforcement of the type of local permitting requirement or regulation that the ICCTA is claimed to categorically preempt, nor has WCL identified any particular permitting requirement that it believes it should not have to undertake. Under 28 U.S.C. §2201(a), issuance of a declaratory judgment requires an "actual controversy," and WCL has not identified one in its counterclaim aside from the McLindon Road weight limitation that is adequately covered by Count 1. *See generally J.N.S. Inc. v. State of Indiana*, 712 F.3d 303, 305 (7th Cir. 1983) ("It is insufficient that an actual controversy may occur in the future; it must presently exist in fact."); *see also, e.g., Wis. Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

## Conclusion

For the reasons described above, the Court dismisses Count 2 of WCL's counterclaim without prejudice but denies Minooka's motion to dismiss [dkt. no. 28] with respect to Count 1. At the telephonic status hearing set for December 3, the parties should be prepared to set a discovery and pretrial schedule through the filing and briefing of any dispositive motions. They should, to the extent possible, confer in this regard before the hearing to attempt to reach agreement on a proposed schedule.

Date: December 2, 2024

_____
MATTHEW F. KENNELLY
United States District Judge